Gen. 441] 441

## STATE TREASURER

### TREASURER MAY INVEST IN SECURITIES OF VARIOUS FEDERAL INSTRUMENTALITIES

October 20, 1994

*The Honorable Lucille Maurer*
*State Treasurer*

You have requested our opinion whether the State Treasurer is authorized by law to invest funds over which the Treasurer has custody in securities issued by the following six entities: the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, a Federal Home Loan Bank, a Federal Farm Credit Bank, and the Student Loan Marketing Association. For the reasons stated below, we conclude that these investments are legally permissible.

## I

### Background

In a recently filed and well-publicized lawsuit in federal court, Charles County is attempting to secure repayment from various securities dealers of millions of dollars that had been invested by the County's former Deputy Treasurer in derivatives and other risky long-term investments. The County's main argument in the suit is that the transactions were *ultra vires*, because these forms of investment were not permitted by the governing provision of public local law. As a secondary argument, however, the County contends that if (contrary to its main argument) the investment authority of the County Treasurer were governed by a provision of public general law – Article 95, §22 of the Maryland Code – the transactions were still *ultra vires*, because the investments were not authorized by that provision either.

In the course of making this latter argument, the County contends that the securities of several of the entities identified in your inquiry are not "any obligation that a federal agency issues in accordance with an act of Congress" and therefore are not permissible investments. *See* Memorandum in Support of Motion

for Preliminary Injunction, *County Commissioners of Charles County, Maryland v. Liberty Capital Markets, Inc., et al.*, Case No. DKC 94-2188 ("County Memorandum").

Because the State Treasurer's office has invested in securities issued by these entities, the argument of the County, if correct, would have a major impact on the State's existing investment portfolio and on future investments.[1] Given the significance of the issue for the State, we are making an exception to our usual policy of refraining from addressing in an opinion an issue that is pending before a court. As explained below, we reach a different conclusion than the County about the meaning of the State law.[2]

## II

### Treasurer's Investment Authority

Article 95, §22 provides that county commissioners and others may invest any "unexpended or surplus monies in any fund or account in which they have custody or control in obligations or repurchase agreements of the type in which the Treasurer may reinvest under §6-222 of the State Finance and Procurement Article ...." The latter provides, in pertinent part, that the Treasurer may invest in "any obligation that a federal agency issues in accordance with an act of Congress ...." §6-222(a)(2) of the State Finance and Procurement ("SF" Article), Maryland Code.[3]

---

[1] In 1993, State investments in these securities totalled about $169,000,000.

[2] We take no position, of course, concerning the public local law on which Charles County principally relies in its suit. Nor does this opinion discuss prudential or other limitations on the *types* of securities (*e.g.,* derivatives) that might be purchased. Our focus is solely on the status of the issuers under the pertinent State law.

[3] None of the obligations in question is backed by the full faith and credit of the United States, a category of permissible investment regardless of the "federal agency" status of the issuer. SF §6-222(a)(1). SF §6-222 also authorizes other types of investments that are not relevant to your inquiry.

One of the entities about which you inquire, the Government National Mortgage Association, is a "federal agency," a component of the federal Department of Housing and Urban Development. *See* 12 U.S.C. §§1716b, 1717(a)(2)(A), and 1723. Investments in GNMA securities are unquestionably authorized under SF §6-222(a)(2), and the County does not suggest otherwise in its suit.

The County does contend that four of the entities – the Federal National Mortgage Association ("FNMA"), the Federal Home Loan Mortgage Corporation ("FHLMC"), the Federal Home Loan Bank ("FHLB"), and the Federal Farm Credit Bank ("FFCB") – are not federal agencies. Specifically, the County regards it as "clear that FNMA is not a federal agency, but is a private, federally-sponsored corporation." County Memorandum at 12. With respect to the FHLMC, the County argues that "like FNMA, FHLMC is a private, federally-sponsored corporation, not a federal agency." County Memorandum at 13. With respect to an FHLB, the County argues that, "given [its] structure and governance ... it cannot be characterized as a federal agency." County Memorandum at 15. Finally, with respect to an FFCB, the County argues that it "is not an agency of the United States" but is instead "a federally chartered instrumentality of the United States." County Memorandum at 16.

In summarizing this aspect of its argument, the County acknowledges that these entities "may for some purposes be characterized as federal instrumentalities." *Id*. Pointing to the Community Development Administration statute, however, which refers to obligations "issued by federal agencies or instrumentalities," the County contends that "the Maryland General Assembly recognizes a difference between federal agencies and federal instrumentalities" and, in SF §6-222, "chose not to include instrumentalities in the list of issuers of permitted investments ...." County Memorandum at 17. *Cf*. Article 83B, §2-208(b) of the Maryland Code.

The County did not have occasion in its memorandum to discuss the status of the Student Loan Marketing Association ("SLMA"). The analysis, however, would be the same. The SLMA is a federally-chartered, private corporation. 20 U.S.C. §1087-2. While the SLMA might be a federal instrumentality for some purposes, if the FNMA is not a federal agency, neither is the SLMA.

We accept the premise of the County's argument: Except for the GNMA, all of the entities about which you inquire are best characterized as federal instrumentalities. Although they were established by Congress and authorized by Congress to issue securities, they are not regarded as federal agencies in the strict sense of that term. They are not part of the executive branch of the federal government in the way that cabinet departments or independent regulatory agencies are. If the General Assembly was cognizant of the distinction between federal agencies and federal instrumentalities when it enacted what is now SF §6-222(a) (as it obviously was when it enacted the Community Development Administration statute), then the reference to "federal agencies" should be taken to exclude the obligations of these federal instrumentalities, as the County argues.

As a general matter, however, the two terms are not always used with fine distinctions in mind. The leading law dictionary, for example, defines "federal instrumentality" as a "means *or agency* used by the federal government to implement or carry out a federal law or function.... A government *agency* immune from State control." *Black's Law Dictionary* 611 (6th ed. 1990) (emphasis added). This same dictionary goes on to define the FHLMC as a "federal agency," even though it is a private corporation. *Id*. The evolution of the statute that is now SF §6-222(a) makes clear that the term "federal agency" in this context was *not* intended to reflect a technical or narrow meaning of that term, so as exclude federal instrumentalities. Rather, the General Assembly meant "federal agency" to include precisely the entities about which you inquire.

The original law that addressed the investment alternatives open to the Treasurer, enacted in 1943, limited those investments to instruments backed by the full faith and credit of the United States. *See* Chapter 78, Laws of Maryland 1943.

The next significant development occurred in 1968, when the General Assembly amended former Article 95, §22 to expressly authorize investment in the obligations of the Federal National Mortgage Association. Chapter 127 of the Laws of Maryland 1968. When Chapter 127 was enacted, the FNMA was a federal agency, a component of the federal Department of Housing and Urban Development. At that very time, however, legislation was pending before Congress to convert the FNMA to private status. *See* H.R. 17989 and S. 3497 (90th Cong., 2d Sess.). This federal legislation, part of the Housing and Urban Development Act of 1968, passed in the summer of that year. *See* Pub. L. No. 90-448, 82 Stat. 476. The

legislation divided the old FNMA in half, retaining a new entity called the Government National Mortgage Association as part of the federal Department of Housing and Urban Development and reconstituting the FNMA as a federally chartered, stockholder-owned corporation. The FNMA's private status became effective in 1970.

One year later, in Chapter 240 of the Laws of Maryland 1971, the General Assembly repealed and reenacted Article 95, §22. The reenacted version continued to authorize investment in the obligations of the FNMA – then a private corporation, just as it is now – and added authorization for investment in the obligations of "federal land banks, federal intermediate credit banks or banks for cooperatives, issued pursuant to Acts of Congress ...." These banks were not agencies of the federal government in the narrow sense. Rather, they were (and still are, in their current form as Farm Credit Banks) federal instrumentalities. *See Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941).

The last major change occurred in 1976, with the enactment of Chapter 329 (Senate Bill 825). This bill amended Article 95, §22 to delete the reference to "the Federal National Mortgage Association, federal land banks, federal intermediate credit banks or banks for cooperatives," and substitute instead the term "federal governmental agencies." The report of the Senate Budget and Taxation Committee states that the purpose of the legislation was to "allow the State Treasurer to invest in a wider range of federal obligations." Report on SB 825 (March 11, 1976). The report summarized the then-current law as "specif[ying] certain federal agencies such as Federal National Mortgage Association, federal land banks, federal intermediate credit banks, which the State may invest in their obligations. This bill changes the specific designations to all Federal agencies." It is obvious from this report that the General Assembly was not using the term "federal agencies" in any technical sense, as distinguishing federal agencies from instrumentalities, but rather was using the term simply as an inclusive label for the kind of federally sponsored entity previously listed in the statute – including, in particular, the FNMA and federal land banks.[4]

---

[4] According to notes in the bill file, the only testimony on the bill was that of its true sponsor, former Treasurer James, who testified that "[t]he bill simply uses Federal Government agencies instead of the agencies' specific name, which is subject to change. Federal Government

(continued...)

The fiscal note accompanying Senate Bill 825 summarized the bill as authorizing the State Treasurer "to invest any available State funds as appropriate in the obligations of any Federal government agency rather than the specified few presently allowed in the law." The bill would "affor[d] the Treasurer an opportunity to invest in a wider range of Federal government obligations."[5]

Later enactments redesignated the provisions governing investments by the Treasurer but did not change the scope of permissible investments in federally-affiliated issuers. *See* Chapter 604, Laws of Maryland 1981, and Chapter 55, Laws of Maryland 1983. Then, in Chapter 11 of the Laws of Maryland 1985, the General Assembly recodified the provision as SF §§6-222 and 6-223. The Revisor's Note confirms that the recodification was "new language derived without substantive change" from the source law.

In light of this legislative history, we conclude that the General Assembly used the term "federal agency" in SF §6-222(a)(2) to encompass not only entities that are federal agencies in the strict sense but also those that were created Congress to advance federal policy through the issuance of securities. These entities have, by statute, a relationship to the federal government that makes their obligations more secure than issuers without such a relationship. The United States is expressly empowered, for example, to purchase the securities of the FNMA, FHLB, FFCB, and SLMA, so as to safeguard against liquidity problems. *See* 12 U.S.C. §1719(c) (FNMA); 12 U.S.C. §1431(i) (FHLB); 12 U.S.C. §2158 (FFCB); 20 U.S.C. §1087-2(h)(5) (SLMA). *See also* 12 U.S.C. §1455(j) (unsecured obligations of the FHLMC to be issued with approval of Treasury Secretary); 12 U.S.C. §1452(f) (obligations of the FHLMC "may be accepted as security for all ... funds ... under the authority and control of the United States or any officers thereof").

--------

[4] (...continued)
Agencies is a broader term."

[5] The fiscal note also pointed out that, "as the section of the law amended by this bill also governs the investment opportunities of the subdivisions, their investment pool system will expand and presumably their investment return should grow."

### III

### Conclusion

In summary, it is our opinion that the Treasurer is authorized by law to invest in the obligations of the Government National Mortgage Association, the Federal National Mortgage Association, a Federal Home Loan Bank, the Federal Home Loan Mortgage Corporation, a Federal Farm Credit Bank, and the Student Loan Marketing Association.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*